| | | | |
|---|---|---|---|
| JALEN COOPER, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | |
| | ) | | |
| CITY OF MARKHAM, A MUNICIPAL | ) | | |
| CORPORATION, and individually, CITY OF | ) | | |
| MARKHAM POLICE OFFICER C. WRIGHT | ) | | |
| #584, CITY OF MARKHAM POLICE | ) | | |
| SERGEANT J. JONES #419, CITY | ) | | |
| OF MARKHAM POLICE SERGEANT D. | ) | | |
| WALKER #425, CITY OF MARKHAM POLICE | ) | | |
| DETECTIVE JEHIEL #538, CITY OF | ) | | |
| MARKHAM POLICE OFFICER M. CARRY | ) | | |
| #580, and CITY OF MARKHAM | ) | | |
| POLICE DETECTIVE SIMS #556, | ) | | |
| | ) | | |
| Defendants. | ) | | |
| | ) | JURY TRIAL DEMANDED | |

## PLAINTIFF'S COMPLAINT AT LAW

**NOW COMES** the Plaintiff, JALEN COOPER, (hereinafter "Plaintiff") by and through his attorneys, GOTTREICH GRACE & THOMPSON, and complains of Defendants, CITY OF MARKHAM, A MUNICIPAL CORPORATION, and individually, CITY OF MARKHAM POLICE OFFICER WRIGHT #584, CITY OF MARKHAM POLICE OFFICER J. JONES #419, CITY OF MARKHAM POLICE SERGEANT D. WALKER #425, CITY OF MARKHAM POLICE DETECTIVE JEHIEL #538, CITY OF MARKHAM POLICE OFFICER M. CARRY #580, and CITY OF MARKHAM POLICE DETECTIVE SIMS #556 and states as follows:

1

## Introduction

1.      This action is brought pursuant to 42 U.S.C. 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution and under the laws of the State of Illinois.

2.      Plaintiff was arrested by CITY OF MARKHAM POLICE OFFICER C. WRIGHT #584 (hereinafter "Defendant WRIGHT") on May 3, 2016, at approximately 7:00 a.m. at the Southland Inn and Suites Hotel located at 2850 West 159th Street, Markham, Illinois.

3.      During the course of the arrest, Plaintiff surrendered himself by exiting a hotel room while unarmed, with his hands held out to his side when Defendant WRIGHT discharged his duty weapon and shot Plaintiff in the right leg shattering Plaintiff's fibula and causing serious pain and suffering.

4.      Plaintiff, at the time he was shot by Defendant WRIGHT, was not armed, was not resisting arrest, and did not pose any threat of harm to Defendant WRIGHT or any other person.

5.      After being shot in the right leg and as Plaintiff lie bleeding on the floor of the hotel, Defendant WRIGHT punched Plaintiff in the head while Defendant WRIGHT was placing handcuffs on the Plaintiff.

6.      Plaintiff, at the time he was punched in the head by Defendant WRIGHT, was bleeding from a gunshot wound to the leg, in serious pain, unable to defend himself and was not resisting Defendant WRIGHT's efforts to arrest him, nor did Plaintiff attempt to defeat the arrest by Defendant WRIGHT by fleeing.

7.    The punch by Defendant WRIGHT was willful, wanton, unprovoked, and malicious and was not necessary to complete the arrest of Plaintiff.

8.    After being handcuffed by Defendant WRIGHT, as Plaintiff continued to lie on the floor of the hotel bleeding from a gunshot wound, Defendant WRIGHT dragged the Plaintiff down the hall of the hotel room with no regard for the Plaintiff's well-being or physical condition.

9.    Defendant WRIGHT's action of dragging the Plaintiff down the hallway served no legal or justifiable purpose other than to cause Plaintiff pain and suffering, emotional distress and was done with the sole purpose of punishing the Plaintiff.

10.   After dragging the Plaintiff, Defendant WRIGHT placed his knee on the back of the Plaintiff's neck and kneeled on the Plaintiff's neck pinning the Plaintiff to the floor.

11.   Defendant WRIGHT's act of kneeling on the Plaintiff's neck and pinning Plaintiff to the floor while Plaintiff lay injured and bleeding from a gunshot wound and while Plaintiff was not attempting to resist or otherwise defeat Defendant WRIGHT's arrest of Plaintiff served no legal or justifiable purpose other than to cause Plaintiff pain and suffering, emotional distress and was done with the sole purpose of punishing the Plaintiff.

12.   After the Plaintiff was arrested by Defendant, the remaining named Defendants conspired to justify the unnecessary shooting and use of excessive force towards the Plaintiff by Defendant WRIGHT by ordering Defendant WRIGHT to not give an official account of the shooting of Plaintiff; falsifying statements and facts in an attempt to justify the shooting of Plaintiff; failing to secure the scene of the shooting; failing to interview eyewitnesses to the event, failing to investigate blatant discrepancies in Defendant WRIGHT's version of events as related to other

Defendant Officers, Detectives and Sergeants; failing to report Defendant WRIGHT's use of excessive force in punching, dragging and kneeling on the neck of Plaintiff though this excessive force was captured on video and recovered by Defendant Detectives.

## Jurisdiction and Venue

13. This action is brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983, §1985, §1986 and the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

14. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a), the Constitution of the United States, and all state claims pursuant to this Court's supplemental jurisdiction powers under 28 U.S.C. §1367.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

## Parties

16. Plaintiff was a resident of City of Ottumwa, County of Wapello, and State of Iowa, at all times relevant to the allegations of this complaint and was a citizen of the United States.

17. The Defendant, CITY OF MARKHAM, is a municipal corporation within the Northern District of Illinois and, at all relevant times, it employed the other Defendants named in this action.

18. At all times relevant to this complaint, Defendant WRIGHT was a police officer employed by the CITY OF MARKHAM Police Department to perform duties in the CITY OF MARKHAM.

19.   At all times relevant to this complaint, Defendant WRIGHT was acting under color of state law, ordinance, and/or regulation, statutes, custom, and usage of CITY OF MARKHAM.

20.   At all times material to this complaint, Defendant WRIGHT was an employee and agent of the CITY OF MARKHAM and acting within the scope of his employment with the CITY OF MARKHAM as police personnel.

21.   Defendant WRIGHT, is sued individually.

22.   At all times relevant to this complaint, Defendant, CITY OF MARKHAM POLICE SERGEANT J. JONES #419 (hereinafter Defendant JONES), was a police officer employed by the CITY OF MARKHAM Police Department to perform duties in the CITY OF MARKHAM.

23.   At all times relevant to this complaint, Defendant JONES was acting under color of state law, ordinance, and/or regulation, statutes, custom, and usage of CITY OF MARKHAM.

24.   At all times material to this complaint, Defendant JONES was an employee and agent of the CITY OF MARKHAM and acting within the scope of his employment with the CITY OF MARKHAM as police personnel.

25.   Defendant JONES, is sued individually.

26.   At all times relevant to this complaint, Defendant CITY OF MARKHAM POLICE SERGEANT D. WALKER #425 (hereinafter Defendant WALKER) was a police officer employed by the CITY OF MARKHAM Police Department to perform duties in the CITY OF MARKHAM.

27.     At all times relevant to this complaint, Defendant WALKER was acting under color of state law, ordinance, and/or regulation, statutes, custom, and usage of CITY OF MARKHAM.

28.     At all times material to this complaint, Defendant WALKER was an employee and agent of the CITY OF MARKHAM and acting within the scope of his employment with the CITY OF MARKHAM as police personnel.

29.     Defendant WALKER, is sued individually.

30.     At all times relevant to this complaint, Defendant CITY OF MARKHAM POLICE DETECTIVE JEHIEL #538 (hereinafter Defendant JEHIEL) was a police officer employed by the CITY OF MARKHAM Police Department to perform duties in the CITY OF MARKHAM.

31.     At all times relevant to this complaint, Defendant JEHIEL was acting under color of state law, ordinance, and/or regulation, statutes, custom, and usage of CITY OF MARKHAM.

32.     At all times material to this complaint, Defendant JEHIEL was an employee and agent of the CITY OF MARKHAM and acting within the scope of his employment with the CITY OF MARKHAM as police personnel.

33.     Defendant JEHIEL, is sued individually.

34.     At all times relevant to this complaint, Defendant CITY OF MARKHAM POLICE OFFICER M. CARRY #580 (hereinafter Defendant CARRY) was a police officer employed by the CITY OF MARKHAM Police Department to perform duties in the CITY OF MARKHAM.

35.     At all times relevant to this complaint, Defendant CARRY was acting under color of state law, ordinance, and/or regulation, statutes, custom, and usage of CITY OF MARKHAM.

36.     At all times material to this complaint, Defendant CARRY was an employee and agent of the CITY OF MARKHAM and acting within the scope of his employment with the CITY OF MARKHAM as police personnel.

37.     Defendant CARRY, is sued individually.

38.     At all times relevant to this complaint, Defendant CITY OF MARKHAM POLICE DETECTIVE SIMS #556 (hereinafter Defendant SIMS) was a police officer employed by the CITY OF MARKHAM Police Department to perform duties in the CITY OF MARKHAM.

39.     At all times relevant to this complaint, Defendant SIMS was acting under color of state law, ordinance, and/or regulation, statutes, custom, and usage of CITY OF MARKHAM.

40.     At all times material to this complaint, Defendant SIMS was an employee and agent of the CITY OF MARKHAM and acting within the scope of her employment with the CITY OF MARKHAM as police personnel.

41.     Defendant SIMS, is sued individually.

**Facts**

42.     On or about May 3, 2016, Plaintiff was an invited guest of Helen Marshall, a registered guest, at the Southland Inn and Suites hotel located at 2850 West 159th Street, Markham, Illinois.

43.     On or about May 3, 2016, Brittany Clark, the hotel manager, heard an altercation on the second floor and contacted Defendant WRIGHT for assistance.

44. Defendant WRIGHT was already located within the Southland Inn and Suites when the Hotel Manager, Brittany Clark, asked him to investigate the altercation between Plaintiff and Helen Marshall.

45. Defendant WRIGHT relocated himself to the second floor hallway of the hotel.

46. Defendant WRIGHT had his duty weapon drawn when he arrived on the second floor and had his duty weapon drawn while he attempted to kick in the door to a hotel room that was not occupied by Plaintiff and/or Helen Marshall.

47. Defendant WRIGHT then saw Helen Marshall through the partially opened door of room 212.

48. Defendant WRIGHT relocated to room 212 and assisted Helen Marshall as she exited room 212 while in an altercation with Plaintiff.

49. While Defendant WRIGHT assisted Helen Marshall Defendant WRIGHT had his gun drawn from its holster.

50. Defendant WRIGHT, while holding his firearm with one hand, sideways, and pointing the gun at the Plaintiff's head, ordered the Plaintiff to exit room 212.

51. At the same time that Helen Marshall and Plaintiff were exiting room 212, a black male witness with dreadlocks was looking out of his nearby hotel room watching the events unfold.

52. Upon information and belief, the male black witness with dreadlocks is named William Crook.

53. Plaintiff exited room 212 and entered the hallway of the hotel where Helen Marshall and Defendant WRIGHT were located.

54. The door to room 212 closed and locked behind the Plaintiff when he exited the hotel room.

55.     Defendant WRIGHT continued to point his gun at the Plaintiff while holding the firearm with one hand and sideways.

56.     After Plaintiff entered the hallway, he walked towards Defendant WRIGHT with his hands extended out to his sides and his palms open away from his body in a gesture of surrender.

57.     Plaintiff's hands were visible and empty when he exited the hotel room.

58.     Plaintiff was not armed with a firearm or any other dangerous weapon, was not attempting to escape or otherwise flee, and posed no immediate threat to Defendant WRIGHT or Helen Marshall.

59.     As Plaintiff was in the act of surrendering himself, Defendant WRIGHT discharged his duty weapon and shot Plaintiff in the right leg causing serious pain and suffering and physical deformity in that he shattered the Plaintiff's right fibula.

60.     After Defendant WRIGHT shot the Plaintiff in the right leg, Defendant WRIGHT, knowing the Plaintiff was unarmed and posed no risk to Defendant WRIGHT or others, immediately holstered his weapon, approached the Plaintiff with no support from other police officers and began to handcuff the Plaintiff.

61.     At no point in time did Defendant WRIGHT search the Plaintiff.

62.     Defendant WRIGHT knew the Plaintiff was unarmed.

63.     As Defendant WRIGHT was handcuffing the Plaintiff, he punched Plaintiff in the back of the head while Plaintiff lie face down on the floor bleeding from the gunshot would inflicted by Defendant WRIGHT.

64.     At the time Defendant WRIGHT punched the Plaintiff in the back of the head, Plaintiff was bleeding from a gunshot wound, in serious pain, unable to defend

himself and was not resisting Defendant WRIGHT nor did Plaintiff attempt to defeat the arrest by Defendant WRIGHT.

65.    The punch thrown by Defendant WRIGHT was willful, wanton, unprovoked, and malicious and was not necessary to complete the arrest of Plaintiff.

66.    Defendant WRIGHT handcuffed Plaintiff's hands behind his back as Plaintiff continued to lie on the floor of the hotel bleeding from a gunshot wound, when Defendant WRIGHT dragged the Plaintiff down the hallway of the hotel with no regard for the Plaintiff's injuries.

67.    Defendant WRIGHT's act of dragging Plaintiff served no legal or justifiable purpose other than to cause Plaintiff pain and suffering, emotional distress and was done with the sole purpose of punishing and/or causing further injury to the Plaintiff.

68.    After Defendant WRIGHT dragged the Plaintiff down the hallway, Defendant WRIGHT placed his knee on the back of the Plaintiff's neck and proceeded to kneel on the Plaintiff's neck as Plaintiff lie on the floor bleeding.

69.    Plaintiff was not at that time, nor at any other time, attempting to resist arrest, attempting to flee, or otherwise being uncooperative with Defendant WRIGHT.

70.    Plaintiff yelled that he was in pain and asked Defendant WRIGHT why Defendant WRIGHT shot him.

71.    Defendant WRIGHT told the Plaintiff that he was lucky he didn't kill him.

72.    Defendant WRIGHT then attempted to open the door to room 212 and found that the door was locked.

73.    At this time, officers from the City of Markham Police Department arrived in the hallway to assist.  The initial arriving officers included Defendant WALKER, Defendant CARRY, and Defendant LEWIS.

74.     The witness believed to be William Crook is present in the hallway with Helen Marshall while Officers attempt to enter room 212.

75.     An additional witness believed to be named Michelle Murph entered the hallway from a nearby hotel room.

76.     At this time, Defendant WRIGHT informed Defendant CARRY that there may be a gun in hotel room 212 because Defendant WRIGHT thought that he heard the racking of a slide on a semiautomatic pistol.

77.     At the time Defendant WRIGHT claimed to hear the racking of a pistol slide, the hotel Manager, Brittany Clark, was 50 feet down the hall in the stairwell area of the second floor.

78.     Defendant Officers report that the Hotel Manager, Brittany Clark, also heard the racking of a semiautomatic pistol, though she was nowhere near room 212 at that time.

79.     Defendant WRIGHT never saw the Plaintiff with a gun at any point in his brief encounter with the Plaintiff as reflected in Defendant WRIGHT's statement to Defendant CARRY.

80.     Defendant CARRY saw there was no gun in the hallway of the hotel.

81.     Defendant WRIGHT, Defendant LEWIS and Defendant CARRY, then obtained a key to the door of room 212 from Helen Marshall and unlocked the hotel room door.

82.     The witness believed to be William Crook is present in the hallway walking around with no restraint and spoke to the Plaintiff as he is lying on the floor.

83.     The witness William Crook told Defendant CARRY that the Plaintiff attempted to rape his sister.

84. At no point in time did Defendant WALKER, Defendant CARRY, Defendant LEWIS or any other officer present at the scene attempt to restrict access to the scene of the shooting, or to remove William Crook from the scene of the shooting.

85. Defendant CARRY and Defendant WRIGHT entered the hotel room. Eventually a 9mm Ruger, Semi-Automatic pistol was found inside the locked hotel room 212 on the floor.

86. Helen Marshall, Michelle Murph, and William Crook all continued to stand within feet of the Plaintiff in the hallway and watch as the Plaintiff is treated by EMS.

87. After the 9mm handgun is recovered from the hotel room, Defendant WALKER reported that Defendant WRIGHT saw the Plaintiff holding the gun to the head of Helen Marshall prior to Helen Marshall exiting room 212.

88. Defendant WRIGHT never saw the Plaintiff holding a firearm.

89. Defendant WRIGHT never reports that Plaintiff was holding a gun to the head of Helen Marshall.

90. Defendant WRIGHT never reports what the Plaintiff did with the gun prior to Plaintiff exiting room 212 while obviously unarmed.

91. The alleged statement by Defendant WRIGHT given to Defendant WALKER directly contradicts what Defendant WRIGHT told Defendant CARRY moments earlier upon Defendant CARRY's arrival on scene.

92. Defendant WALKER instructed Defendant WRIGHT to not make any additional statements regarding the shooting of the Plaintiff, despite the fact that the Police Officer Defendants had yet to investigate the alleged armed robbery.

93. To date, Defendant WRIGHT has never given a formal account of what took place at the Southland Inn and Suites despite being an eyewitness to the alleged arm robbery.

94.　The statement by Defendant WRIGHT given to Defendant WALKER is also a direct contradiction to the events as described by Helen Marshall in her video recorded statement.

95.　Helen Marshall indicated that when Defendant WRIGHT arrived at room 212 the Plaintiff had the gun in his left hand pointed down at the floor.

96.　The statement by Defendant WRIGHT given to Defendant WALKER is in direct contradiction to a report written by Defendant JONES, where there is no allegation that Defendant WRIGHT ever saw a gun in Plaintiff's hands or a gun pointed at Helen Marshall's head.

97.　Defendants JEHIEL, Defendant JONES and Defendant SIMS were assigned as detectives to investigate the alleged armed robbery that took place in room 212.

98.　Defendant JEHIEL recovered over 200 video recordings from the Southland Inn and Suites.

99.　The video recordings show multiple angles of the events discussed herein including the excessive use of force by Defendant WRIGHT against Plaintiff.

100.　The videos also clearly show the presence of multiple eyewitnesses to the alleged armed robbery including William Crook and Michelle Murph.

101.　At no point in their investigation did Defendants JEHIEL, Defendant JONES and Defendant SIMS or any other named Defendant make any attempt to interview Michelle Murph, William Crook or any other hotel guest present at the time of the alleged armed robbery about the events leading up to the alleged armed robbery.

102.　At no point in their investigation did Defendants JEHIEL, Defendant JONES and Defendant SIMS or any other named Defendant take a formal statement from Defendant WRIGHT who was an eyewitness to the alleged armed robbery.

103. At no point in the investigation did Defendants JEHIEL, Defendant JONES and Defendant SIMS or any other named Defendant investigate or otherwise report the clear use of excessive force by Defendant WRIGHT against the Plaintiff.

104. Plaintiff was later charged in the Circuit Court of Cook County Sixth Municipal District with Armed Robbery, Aggravated Unlawful Restraint, and two counts of Aggravated Unlawful use of Weapon.

105. As a direct and proximate result of the unlawful and malicious acts of Defendants, all committed under color of their authority as a City of Markham Police Officers, Plaintiff experienced humiliation, emotional distress, grievous bodily harm, extreme pain and suffering, physical deformity and infirmity, incurred expenses, and was otherwise damaged by the actions of the Defendants.

## CAUSES OF ACTION

## <u>COUNT I – EXCESSIVE FORCE</u>

**DEPRAVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 – Officer C. Wright #584**

106. Plaintiff re-alleges and incorporates by reference the allegation set forth in each preceding paragraph as if fully set forth herein.

107. The conduct and actions of Defendant WRIGHT acting in concert and under color of law, in discharging his duty weapon and shooting the surrendering and unarmed Plaintiff in the right leg causing his right fibula to be shattered, punching the Plaintiff in the head while Plaintiff lay still and face down on the ground while bleeding from a gunshot wound to his right leg, dragging the injured Plaintiff down the hallway while Plaintiff was handcuffed, and kneeling on Plaintiff's neck after Plaintiff was shot, handcuffed and detained was excessive and unreasonable, was done

intentionally, willfully, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of his acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Plaintiff's rights as guaranteed under 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution, including the right to be free from an unreasonable seizure of her person and the right to be free from the use of excessive, unreasonable, and unjustified force.

108.    As a direct and proximate result of the unlawful and malicious acts of Defendant WRIGHT, all committed under color of his authority as a City of Markham Police Officer, Plaintiff experienced humiliation, emotional distress, grievous bodily harm, extreme pain and suffering, physical deformity and infirmity, incurred expenses, and was otherwise damaged by the willful and wanton actions of Defendant WRIGHT.

## COUNT II – BATTERY

### COMMON LAW CLAIM- Officer C. Wright #584

109.    Plaintiff re-alleges and incorporates by reference the allegation set forth in each preceding paragraph as if fully set forth herein.

110.    Defendant WRIGHT knowingly and intentionally made physical contact in a harmful and offensive manner with Plaintiff in that Defendant WRIGHT shot the Plaintiff in the right leg causing his right fibula to be shattered, punched the Plaintiff in the head while Plaintiff lay still and face down on the ground while bleeding from a gunshot wound to his right leg, dragged the injured Plaintiff down the hallway while Plaintiff

was handcuffed, and kneeled on Plaintiff's neck after Plaintiff was shot, handcuffed and detained.

111. The acts and conduct of Defendant WRIGHT were the direct and proximate cause of injury and damage to Plaintiff and violated Plaintiff's statutory and common law rights as guaranteed by the laws and Constitution of the State of Illinois.

112. Defendant WRIGHT's acts constituted a battery upon Plaintiff in that the above described bodily contact was intentional, unauthorized, and grossly offensive in nature.

113. The actions of Defendant WRIGHT were intentional, reckless, unwarranted, and without any just cause or provocation.

114. Defendant WRIGHT knew, or should have known, that his actions were without the consent of Plaintiff.

115. The injuries sustained by Plaintiff were caused wholly and solely by reason of Defendant WRIGHT's conduct herein described, and Plaintiff did not contribute thereto.

116. As a direct and proximate result of the unlawful and malicious acts of Defendant WRIGHT, all committed under color of his authority as a City of Markham Police Officer, Plaintiff experienced humiliation, emotional distress, grievous bodily harm, extreme pain and suffering, physical deformity and infirmity, incurred expenses, and was otherwise damaged by the willful and wanton actions of Defendant WRIGHT.

**COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**COMMON LAW CLAIM- Officer C. Wright #584, Sergeant J. Jones #419, Sergeant D. Walker #425, Detective Jehiel #538, Officer M. Carry #580, and Detective Sims #556**

117. Plaintiff re-alleges and incorporates by reference the allegation set forth in each preceding paragraph as if fully set forth herein.

118. In the manner described more fully above, by engaging in the misconduct described above, the Defendant Officers, engaged in extreme and outrageous conduct.

119. The Defendant Officers' actions set forth above were rooted in an abuse of power and authority.

120. Defendant Officers, performed the acts detailed above with the intent of inflicting severe emotional distress on Plaintiff or performed the acts recklessly with knowledge of the high probability that their conduct would cause such distress.

121. The Defendant Officers' actions set forth above were undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

122. The misconduct described in this Count was undertaken by the Defendant Officers, within the scope of their employment such that their employer, the City of Markham, is liable for their actions.

123. As a direct and proximate result of the unlawful and malicious acts of Defendants, all committed under color of their authority as City of Markham Police Officers, Plaintiff actually experienced humiliation, emotional distress, grievous bodily harm, extreme pain and suffering, physical deformity and infirmity, incurred expenses, and was otherwise damaged by the willful and wanton actions of the Defendants.

## COUNT IV – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**COMMON LAW CLAIM- Officer C. Wright #584, Sergeant J. Jones #419, Sergeant D. Walker #425, Detective Jehiel #538, M. Carry #580, and Detective Sims #556**

124. Plaintiff re-alleges and incorporates by reference the allegation set forth in each preceding paragraph as if fully set forth herein.

125.    Defendants, while acting as agents and employees for Defendant City of Markham, in
        their capacity as police officers for the City of Markham, owed a duty to Plaintiff to
        perform their police duties without the use of excessive force and not to abuse their
        power and authority as police officers for the City of Markham.

126.    The actions and conduct of the Defendant Officers, towards Plaintiff constitutes a
        breach of the aforementioned duty for which Defendants are individually liable.

127.    The acts and conduct of Defendant Officers, was the direct and proximate cause of
        emotional distress to Plaintiff.

128.    As a direct and proximate result of the acts of Defendants, all committed under color
        of their authority as a City of Markham Police Officers, Plaintiff experienced
        humiliation, emotional distress, grievous bodily harm, extreme pain and suffering,
        physical deformity and infirmity, incurred expenses, and was otherwise damaged by
        the willful and wanton actions of the Defendants.

## COUNT VI – INDEMNIFICATION

## 745 ILCS 10/9-101

129.    Plaintiff re-alleges and incorporates by reference the allegation set forth in each
        preceding paragraph as if fully set forth herein.

130.    Defendant, City of Markham, is the employer of Defendants WRIGHT, JONES,
        WALKER, JEHIEL, CARRY and SIMS.

131.    Defendants committed the acts alleged above under color of law and in the scope of
        their employment as employees of the City of Markham while working in their
        capacities as police officers for the City of Markham.

## COUNT VII – RESPONDEAT SUPERIOR

132. Plaintiff re-alleges and incorporates by reference the allegation set forth in each preceding paragraph as if fully set forth herein.

133. In committing the acts alleged in the preceding paragraphs, Defendants WRIGHT, JONES, WALKER, JEHIEL, CARRY and SIMS were members of the City of Markham Police Department, and employees of the City of Markham acting at all relevant times within the scope of their employment.

134. Defendant City of Markham is liable as principal for all the state law torts committed by its employees and agents alleged herein.

## COUNT VIII – CONSPIRACY

### 42 U.S.C. §§ 1985, 1986

135. Each of the paragraphs of this Complaint in incorporated as if restated fully herein.

136. As described more fully above, the Defendant Officers, Detectives and Sergeants, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment with City of Markham Police Department, reached an understanding, engaged and continued to engage in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to justify the unnecessary use of force against the Plaintiff and purposefully failed to investigate the alleged armed robbery and to intentionally inflict severe emotional distress on Plaintiff.

137. Defendants' and their co-conspirators' overt acts, as set forth above, which were committed jointly and/or while conspiring together were with the knowledge and purpose of depriving Plaintiff of the equal protection of the laws and/or of equal privilege and immunities under the law.

138. The Defendants named above also deprived Plaintiff of his right to equal protection of the laws under the Fourteenth Amendment and 42 U.S.C. § 1985.

139. Additionally or alternatively, Defendants knowing that the above §1985 conspiracy to justify the use of excessive force against Plaintiff was being committed or about to be committed, and having the power to prevent or aid in preventing the commission of the acts in furtherance of that conspiracy, neglected and/or refused to do so, in violation of 42 U.S.C. § 1986.

## COUNT IX – CONSPIRACY

### State Law Claim

140. Each of the paragraphs of this Complaint in incorporated as if restated fully herein.

141. As described more fully above, the Defendant Officers, Detectives and Sergeants, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment, reached an understanding, engaged and continued to engage in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to falsely justify the use of excessive force towards Plaintiff and to intentionally inflict severe emotional distress on Plaintiff.

142. Defendants' and their co-conspirators' overt acts, as set forth above, which were committed jointly and/or while conspiring together to falsely justify the use of excessive force and purposefully failing to investigate the alleged armed robbery and to intentionally inflict emotional distress on the Plaintiff, constitute the tort of conspiracy as set forth above.

143. As a result of this violation, Plaintiff suffered without limitation violations of his state rights, loss of liberty, monetary expenses, emotional distress, and other injuries.

WHEREFORE, pursuant to 42 U.S.C. Section 1983, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory damages and, because the Defendant

Officers acted maliciously, wantonly, or oppressively, Plaintiff seeks punitive damages against the Defendants in their individual capacities, plus the costs of this action and attorney's fees, and such other and additional relief as this court deems equitable and just.

## **JURY DEMAND**

Plaintiff, JALEN COOPER, hereby respectfully request a trial by jury pursuant to Federal Rules of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

By:  */s/ James E. Thompson*
James E. Thompson
Gottreich Grace & Thompson
One of the Attorneys for the Plaintiff
311 West Superior Street, Suite 215
Chicago, Illinois, 60654
312-943-0600
#6217334